The H. W. Roos Company *v.* Brady, Appellant.

Argued October 9, 1931.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham, Baldrige and Drew, JJ.

*D. Byrne Flynn,* for appellant.

*H. Leon Bennett,* and with him *Sterling & Willing,* for appellee.

OPINION BY GAWTHROP, J., December 16, 1931:

Defendant appeals from a judgment entered against him on a verdict for plaintiff in an action of replevin. On September 17, 1926, plaintiff, an Ohio corporation, leased to defendant by a written agreement 600 used shores and 2 jacking devices for a period of three months or more at a rental of 35 cents each per month for the shores and 50 cents each per month for the jacking devices. The agreement provided, inter alia, the following: "Option—contractor may purchase above equipment within sixty days from original shipping, applying thereon previously paid net rentals— no discount. Sale price 600 Rooshors $4.25 each. . . . . . . In the event of purchase, title to said articles is not to pass until all payments (including deferred payments and notes or renewals thereof) shall have been fully made in cash;" that in case of any default by defendant, plaintiff could seize the articles leased and remove them from any premises on which they were found without notice or demand; and that "in the event of other orders or any future deliveries, same shall be subject to the terms of this contract." Under this agreement 1288 shores were delivered to defendant between September 17, 1926, and November 28, 1926. Between November 28, 1926, and February 15, 1927, William F. Walker, Jr., the eastern manager of plaintiff, and Carlton A. Bayard, the local representative of plaintiff at its Philadelphia office, talked with defendant and tried to get him to buy the shores which were in his possession under the lease. It is undisputed that on February 25, 1926, defendant purchased 500 of the shores for $2,125, less $528, the net amount of the rentals paid therefor, this being at the sale price fixed by the lease, and that a balance of $400 of the purchase price remained unpaid when this suit was

brought to recover possession of the 500 shores. The basis of plaintiff's assertion of title to and right of possession of these shores is that they were purchased by defendant under the terms of the lease, and particularly the provision that in event of a purchase by the lessee of any of the articles leased title should not pass until all payments had been fully made in cash; and that defendant had failed to pay the balance of $400. The defense sought to be established was that the purchase was made under a new oral agreement made by defendant and plaintiff's duly authorized agents, Walker and Bayard, and that the sale was absolute and not conditional. This issue was submitted to the jury and resolved in plaintiff's favor.

Appellant's statement of the questions involved limits our review to a determination of four questions.

The first contention made in his behalf is that he was entitled to binding instructions in the court below because the evidence does not warrant a finding by the jury that the 500 shores were purchased by him under the terms of the lease, for the reasons that the option to purchase contained in the lease had expired when the purchase was made, and that there is no evidence that the option was extended so as to cover the date of purchase. We are not persuaded that the evidence compels such a conclusion. As already stated, the lease provided for a term of three months *or more* and that future deliveries should be subject to its terms. At the time of the purchase here involved defendant was in possession of the shores under the lease. There was evidence that before the expiration of the sixty day option to purchase plaintiff's agents, Walker and Bayard asked defendant to buy the shores. Bayard testified that ''it was impossible to have the shores taken over within sixty days so we extended the option ....... I followed it up—the taking over of the shores—on numerous oc-

casions between November and February," and that "Mr. Brady said he would purchase 500 of the shores ...... I told Mr. Brady we would allow him all the rental that was paid on the 500 shores, and that he was to pay immediately the balance due, or five hundred times $4.25—the balance, less the rentals—and he was to pay immediately upon presentation of the statement. Q. And what did Mr. Brady say? A. He agreed to purchase them on that basis ...... He was to buy 500 shores at $4.25 according to the terms of the contract. Q. Did you say that, or did he say that, or—? A. I told Mr. Brady at the time. There was no other conversation brought up between Mr. Brady and I other than that ...... Q. What words did he use? A. He said, 'I will buy the shores.' " Under this evidence the jury was warranted in finding that the purchase was made subject to the terms of the lease, which provided that title should not pass until all payments had been made in cash. It follows that the refusal of defendant's point for binding instructions was right, and that his motion for judgment n. o. v. was properly dismissed.

The second complaint is that the trial judge erred in admitting in evidence the lease because it had been superseded by a new and separate purchase agreement. What we have said in discussing appellant's first proposition justifies our dismissing this complaint with the observation that it is devoid of merit.

Appellant urges also that harmful error was committed by the trial judge in excluding evidence offered by him.

The first complaint in this regard is that he was not permitted to prove that the requirements of the Uniform Conditional Sales Act (Act of May 12, 1925, P. L. 603) were not complied with by plaintiff after the retaking of the shores. As we understand the argument of counsel for appellant on this point, the grava-

men of it is that under Section 19 of the act the seller is under the duty to resell the goods retaken by him when the buyer has paid at least fifty per cent. of the purchase price at the time of the retaking, and that, as defendant had paid more than fifty per cent. of the purchase price at the time plaintiff retook possession, and plaintiff failed to resell the goods, defendant is entitled to recover damages under Section 25 of the act. Under this section a buyer has the right to recover from the seller "his actual damages if any, and in no event less than one-fourth of the sum of all payments which have been made under the contract with interest" if he has paid at least fifty per cent. of the purchase price at the time of the retaking, has not redeemed the goods, and the seller retains possession thereof and failed to resell them as required by Section 19. Whatever rights defendant may have against plaintiff under Section 25, it seems clear that he cannot assert them in the present action, in which the only question to be determined is whether plaintiff had the right to retake possession, this right depending upon the determination of the question whether the sale was conditional or absolute. If and when plaintiff's right to retake possession is finally determined in his favor, a retaining by him of the shores without a resale thereof under the provisions of Section 19 of the act, if defendant does not redeem within ten days after plaintiff's right to retake possession, may create an obligation to account to defendant, as provided in Section 25. This is a question which we do not decide. We determine merely that it was not error to sustain the objection to defendant's offer to prove that plaintiff had not complied with the requirements of the Uniform Conditional Sales Act.

When defendant was on the witness stand he testified that Bayard called on him in February, 1927, and suggested that he buy the shores, and that he (defend-

ant) said: "I don't want to lease. I want to own," and that Bayard said that "he could arrange such a transaction for me." His testimony continued thus: "Q. Did he say anything more to you, or did you say anything more to him at that time? A. Yes, sir. At that meeting he mentioned that the credit I had established with his corporation would entitle me to purchase these particular shores on a basis he thought would be entirely satisfactory to me. I said that I would be interested, 'Let me know your terms.'" Counsel for plaintiff objected and asked that this answer be stricken out on the ground that Bayard's authority to bind his principal by a sale on terms different from that provided for in the lease had not been proven. The objection was sustained, and, as we understand the ruling, it included the striking out of the answer. Counsel for defendant then asked the court to strike out Bayard's testimony. Counsel for plaintiff objected and the objection was sustained on the ground that it was too late. Exceptions to these rulings were noted. We have no difficulty in concluding that defendant's testimony as to conversations between him and Bayard as to the terms of the contract of purchase was competent and should have been admitted. It went to the very crux of the case. Plaintiff relied upon the testimony of Bayard to establish the contract of sale by making him its witness. It placed upon him the badge of authority to make such a contract. He related conversations which he had with defendant on the subject. These conversations are relied upon by plaintiff as establishing an oral contract of purchase and sale. The ruling resulted in permitting plaintiff's agent to testify as to the terms of an oral contract which he made with defendant on behalf of his principal and then denying defendant the right to testify as to the terms of the contract. That this ruling was clear and harmful error is so obvious

that the citation of authorities upon the point is unnecessary. The seventh assignment of error is sustained.

The only other complaint is that the charge was erroneous in that it failed to submit to the jury the issue raised by the evidence and the pleadings, and was prejudicial to defendant. A careful examination of the charge has convinced us that it fully and fairly submitted the issues to the jury, and that these objections have no merit.

The seventh assignment of error is sustained, and all the others are overruled.

The judgment is reversed and a new trial awarded.